# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## COREY v. MOORE.

### MARCH 27th, 1890.

| 86 | 721 |
| 93 | 105 |
| 86 | 721 |
| 94 | 685 |
| 86 | 721 |
| s98 | 614 |
| 98 | 616 |

1. CHANCERY PRACTICE—*Review—After-discovered evidence—Case at bar.*—The rule is that petition or bill must set forth, upon affidavit, the discovery of new matter subsequent to the decree, which could not, by reasonable diligence, have been discovered prior thereto, and state its substance—which must be relevant, not merely cumulative, and such as should produce a different result upon another hearing. In case here, *held,* the petition for rehearing was defective and insufficient.

2. IDEM—*Commissioner's report—Laches.*—Commissioner's reports conclusive as to any fact he is directed to ascertain, in absence of proof to the contrary; and when a party neglects to avail himself of opportunity to except to it, he cannot again bring the matter before the court, unless there be a rehearing.

3. DEED—*Acknowledgment before trustee—Case at bar.*—Grantee or beneficiary in deed cannot, as an officer, take the acknowledgment of grantor, and deed admitted to record on certificate thereof cannot effect a notice under the registry laws; but when trust deed describes trustee as " L. Triplett, Jr., and the certificate begins " I, L. Triplett, Jr., a notary public," &c., but is signed " L. Triplett, N. P.," the inference is that the trustee and the notary are different persons.

4. REGISTRY—*Duty of clerk—Validity.*—The clerk is required to admit to record a deed so certified, but that will not preclude an enquiry into the validity of the certificate.

Heard at Staunton.   Decided at Richmond.

Appeal from decrees of circuit court of Rockingham county, rendered April 14, 1887, and April 17, 1889, in the cause of J. S. Harnsberger, late general receiver of said circuit court, who

sued for the use of George E. Sipe, general receiver of said court, on his own behalf and on behalf of all the other lien creditors of Charles A. R. Moore, who should come into the suit on the usual terms. The decree being prejudicial to E. E. Stickley as administrator of Eliza B. Corey, deceased, and others, they appealed. Opinion states the case.

*E. E. Stickley* and *John E. Roller*, for the appellants.

*W. B. Compton*, *H. C. Allen* and *John T. Harris, Sr.*, for the appellees.

Richardson, J., delivered the opinion of the court.

The bill alleges that J. S. Harnsberger, late receiver, &c., for the use of George E. Sipe, general receiver of circuit court of Rockingham county, recovered a judgment against Charles A. R. Moore, at the January term of said court, 1885, for the sum of $396 38, with interest compounded, according to law, on $96 38, part thereof, from the 8th of January, 1879, and on $200, the residue thereof, from the 9th of January, 1879, and costs, $8 75; and, with his bill, the plaintiff exhibits a certified copy of said judgment, and alleges that no part of it has been paid. The bill further alleges that said Charles A. R. Moore owns a valuable tract of land in said county; that the judgment aforesaid is a valid lien thereon, and that the rents and profits of same will not in five years discharge the liens thereon. And the prayer of the bill is that said Charles A. R. Moore be made a party defendant thereto, and required to answer the same, but not on oath; that process may issue, and all proper orders and decrees be made and enquiries directed; that if it shall appear that the rents and profits of said lands will not in five years satisfy the plaintiff's judgment and other subsisting liens thereon, that the said land be sold and the proceeds thereof applied in satisfaction of said judgment and

other liens; or if such rents will so suffice, then that said lands be rented out, and the rents and profits applied to said judgment and other liens until the same are fully satisfied; and for general relief.

The cause having been regularly matured at the October term, 1885, an order of reference was made to ascertain and report: 1st. The real estate owned by the defendant, Charles A. R. Moore. 2d. The fee simple and annual rental value thereof. 3d. The liens thereon in the order of their priority. 4th. Any other matter deemed pertinent by the master or requested by any party in interest.

After due notice, convening the creditors, the master proceeded to execute the decree by taking the account required and reporting the same to court.

In statement "A" the master reports the land of the defendant as "the one-half of the Charles Moore estate, assessed in 1885 at $13,431;" that this land is still in the name of the widow and heirs of Charles Moore, deceased, on the landbooks, but has been deeded to the defendant, Chas. A. R. Moore, by deed dated January 25th, 1877, and recorded June 27th, 1881. The master does not report by whom this deed was made to Chas. A. R. Moore, but it appears elsewhere in the record that it was made to him by his mother, Mrs. Elizabeth G. Moore, the widow of said Charles Moore, deceased, who reserved an annuity of $607 46 on said land from January 1st, 1877, to be paid her during her natural life. The master reports the fee simple value of the land at $70 per acre, and its annual rental value at $1,000.

In statement "B" the master reports the judgment and trust liens, which are arranged in four classes. In class "1" he reports a lien by deed of trust executed by the defendant, Chas. A. R. Moore, and Mary, his wife, and Elizabeth G. Moore to John E. Roller, trustee, dated June 25th, 1881, and recorded June 27th, 1881, on said tract of land, to secure to Samuel Shacklett the sum of $3,000, evidenced by bond dated

June 25th, 1881, with interest payable semi-annually from date. The master reports that Mrs. Elizabeth G. Moore joined in this deed of trust for the purpose of waiving the lien of her said annuity in favor of the Shacklett debt thereby secured; and the deed, which is copied into the record here, shows that she did so waive the lien of her said annuity. Thus the trust deed to secure the Shacklett debt became the first lien on the land of the defendant, Chas. A. R. Moore, and is so reported, and is the only lien reported in the first class, and, with interest to December 5, 1885, amounted to $3,800. The master also reports in this connection that he is not informed of any claim against the defendant, Chas. A. R. Moore, on account of said annuity, and that the annuitant is dead. Hence, we must infer, the annuity was not reported as a charge on the land.

In the second class the master reports a lien by trust deed, dated May 29th, 1883, and recorded June 1st, 1883, and executed by Charles A. R. Moore and Mary E., his wife, to L. Triplett, trustee, to secure to John L. Pitman the sum of $6,666 66⅔, evidenced by bond dated May 29th, 1883, with interest from date, payable semi-annually on November 29th, 1883, and May 29th, 1884, and then annually thereafter; bond due May 29th, 1886. This is the only lien reported in the second class, and, with the interest thereon to the 5th of December, 1885, amounted to $7,673 32⅔; and it is the validity of this trust lien that is assailed in this proceeding.

In class three the master reports the plaintiff's judgment, which, with cost and interest to December 5th, 1885, amounts to $601 69. And in the same class there is reported a judgment, rendered at the January term, 1885, of the Rockingham circuit court, in favor of John E. Roller against the defendant, Chas. A. R. Moore, for $388 35, which, with costs and interest to December 5th, 1885, amounts to $517 63. John E. Roller is one of the two lienors who contest the Pitman lien.

In the fourth class the master reports a judgment, rendered in the circuit court of Shenandoah county at the September

term, 1885, in favor of E. E. Stickley, administrator of E. B. Corey, deceased, against J. W. R. Moore and Chas. A. R. Moore, for $1,000, which, with costs and interest to December 5th, 1885, amounted to $1,045 66.   E. E. Stickley, the plaintiff in this judgment, is the other lienor who assails the Heckman trust lien; but neither he nor John E. Roller pretend to suggest any objection thereto until long after it was reported and confirmed, as will presently be shown.

Such being the tabulated statement of liens reported by the master, in concluding his report to the court he says: "No other statements are deemed necessary, nor are any required."

This report was excepted to by the defendant, Chas. A. R. Moore, upon the following grounds:

"1st. Upon the ground that the commissioner has failed to report what balance, if anything, is due upon the annuity of $607 46, from January 1st, 1877, reserved in the deed of the 25th of June, 1877, in favor of Elizabeth G. Moore, widow of Charles Moore, deceased, during her natural life.   The said Elizabeth G. Moore was living on June 25th, 1881, and united in the deed of trust of that date to John E. Roller, trustee. Her personal representative is a necessary party to the cause and must be brought before the court."

"2d. Upon the ground that the commissioner has failed to report whether or not the joint obligors of C. A. R. Moore in his debt claimed by the complainant, are principals or co-sureties, or joint debtors, and whether or not such joint obligors have any property or estate out of which they can be made to contribute for the payment of said debt to the exoneration of the property of the defendant."

"3d. Upon the ground that there is no testimony to support the finding of the commissioner either as to the fee simple or annual rental value of the real estate of the defendant."

These exceptions were entered over the signature of "John E. Roller, attorney for defendant."

On the 13th of April, 1886, the cause was brought on to

hearing upon the papers formerly read, the said report of the master, and the exceptions thereto filed by the defendant, Chas. A. R. Moore, and was argued by counsel, when a decree was entered recommitting the cause to the master, with instructions to take further testimony upon the questions raised by said exceptions, and, in accordance with such testimony, to revise and reform said report, if such revision be necessary, and file the same in the cause on or before the then next term of the court. ·" And it appearing to the court that John E. Roller, trustee in the deed of trust from C. A. R. Moore and wife to secure Samuel Shacklett, as set forth in said commissioner's report; L. Triplett, trustee in deed of trust from said C. A. R. Moore and wife, to secure Jno. L. Palmer, also set out in said report; and L. Triplett, administrator of the estate of Mrs. Elizabeth G. Moore, deceased, should be made parties to this suit," by the same decree they were made parties defendant, and process was directed to issue, &c.

The master, in pursuance of this decree, did revise his report and state other liens, all of which were by judgment. In so revising his report, the master, by letter, consulted L. Triplett, Jr., administrator of Mrs. Elizabeth G. Moore, the annuitant aforesaid, as to propriety of reporting said annuity as a lien. In response, Triplett wrote to the master, " Your letter received. In reply, will say that no part of the lien of Mrs. E. G. Moore has been paid; and it will only be needed in the event Mrs. E. G. Moore's indebtedness exceeds the assets in sight. As she is security, &c., &c. It can be reported with this explanation, that it will only be needed to pay such debts as she may owe."

The master accordingly reported the annuity lien, which, with interest to March 30th, 1887, the date of the revised report, amounts to $4,951 33. This annuity was, of course, originally the first lien upon the land; but in the deed aforesaid, to secure the Shacklett debt, Mrs. E. G. Moore waived her priority in favor of said Shacklett debt, which made her

annuity the second instead of the first lien. Hence, in the revised report of the master, the Pitman trust deed becomes the third instead of the second lien, as in the first report. And among the additional judgment liens stated in the revised report is a judgment of the circuit court of Shenandoah county, April term, 1884, in favor of George W. Koontz, general receiver of the circuit court, against J. W. R. Moore and Isaiah Allen for $1,000, which, with interest to March 30th, 1887, amounted to $1,033 25.

In the statement of this judgment the name of Chas. A. R. Moore as a judgment debtor does not appear, nor does the report of the master anywhere explain why this judgment is reported as a lien on the lands of the defendant, Chas. A. R. Moore. The judgment is, however, prior in point of time to the Corey judgment, reported in class 4, in the original report of liens, and in the revised report is put in class 4, and the displaced Corey judgment is, in the revised report, stated in class 7. The reason why the Corey judgment is thus moved down in the order of priorities is, that two prior liens thereto were ascertained and reported in the revised report, and these, together with the lien in favor of John E. Roller, stated in the former report, and also prior to the Corey judgment, make up class 5, in the revised report. These debts, in the recapitulation of liens in the revised report, are designated respectively, as 5a., a judgment in favor of John W. Strickler, which, with interest to 30th March, 1887, amounted to $3,047 40; 5b, a lien in favor of John E. Roller, by subrogation, for $151 61, which, with interest to 30th March, 1887, amounted to $156 96; and 5c, the lien reported in favor of John E. Roller in class 3 of the original report, the three debts, thus constituting class 5 in the recapitulation of liens in the revised report, amounting, with interest, as aforesaid, to the sum of $3,750 81. In respect to the lien above referred to as reported in favor of John E. Roller, by subrogation, the master, in his report, says: " It is proper to make some explanation of lien class 6a, as to how any

portion of it remains against the defendant. It appears from the statement of John E. Roller, that, in the arrangement of the lien due to Geo. E. Sipe, gen'l rec'r, per former report, he paid the sum $157 61 " (the statement in recapitulation of liens is $151 61) " as of September 7th, 1886, over and above the amount supplied him by the defendant; hence Roller claims subrogation for that amount, which is allowed." In his revised report the master also states that, in addition to the real estate reported in the former report, the defendant, Chas. A. R. Moore, owns a large interest, about one-sixth, in the Orkney Springs, in Shenandoah county. This revised report was not excepted to by any of the parties to the cause, and, by a decree entered therein, on the 14th of April, 1887, it was in all respects confirmed and approved," and John E. Roller and L. Triplett, Jr., trustees in the deed of trust reported in the cause, were appointed special commissioners to sell the real estate in the bill and proceedings mentioned.

For some reason, not disclosed in the record, no further action was taken in the cause until the 23d of January, 1887, when W. W. Roller was substituted as trustee in the place of John E. Roller, and directed to unite with L. Triplett, Jr., trustee, in executing said decree of sale, of April 14th, 1887; and accordingly, on the 8th day of March, 1889, said W. W. Roller and L. Triplett, Jr., did make sale of said land, when John L. Pitman became the purchaser thereof at $54 per acre, the sale aggregating $18,323 21. Pitman complied with the terms of sale, and the commissioners, Roller and Triplett, Jr., reported it to the court at its April term, 1889, with the recommendation that it be confirmed; whereupon the appellant here, the administrator of E. B. Corey, together with said John E. Roller, asked leave to file their joint petition praying that the said decree of April 14th, 1887, confirming the master's report of liens as aforesaid, be reheard on the alleged ground that the deed of trust to L. Triplett, Jr., securing the debt of said John L. Pitman, was never properly or legally admitted to record, because,

it is alleged, the acknowledgment thereof was taken by the grantee himself, and that therefore the account of liens taken and reported in this cause by the master commissioner, and confirmed by said decree aforesaid, erroneously stated the liens resting upon said real estate. To the filing of said petition the said John L. Pitman filed certain objections in writing; and the cause coming on to be further heard on the 19th of April, 1889, and the court being of the opinion that, under all the circumstances which surrounded the case, it would be unjust to disturb the decree of April 14th, 1887, and being further of the opinion that, by the exercise of due diligence on the part of the petitioner, the errors complained of—if there be any errors—could have been discovered at the time of the rendition of the decree of April 14th, 1887; and being further of opinion that there is no manifest error upon the face of the record, and that the certificate of acknowledgment of the deed of Moore and wife to Triplett, Jr., trustee, was valid as authority to admit the same to record, decreed that leave to file said petition be disallowed, and that the sale to Pitman be approved and confirmed. The case is here on appeal, at the instance of said petitioners, both from the decree of April 14th, 1887, and the decree of April 19th, 1889.

The sole question to be decided is, Did the court below err in the decree of April 19th, 1889, refusing the joint petitioners, Ezra E. Stickley, adm'r of E. B. Corey, dec'd, and John E. Roller, leave to file their petition to rehear the decree entered in the cause on the 14th of April, 1887, confirming the report of liens, and their priorities, ascertained and reported by the master in pursuance of a former decree in the cause? For several reasons, as well those set forth in the decree complained of as those now to be stated, we are clearly of opinion that said decree is without error.

The petition does not allege any error apparent on the face of the decree, nor can it be said that any such error exists. A faint effort is made, however, to found the claim to relief on

the ground of after-discovered evidence. The petition alleges:
"That among the debts reported in said account of liens is a
debt, purporting to have been secured by a deed of trust to L.
Triplett, Jr., trustee, due to John L. Pitman. That if this
debt is allowed to hold the place given it in said report as a
lien against said real estate, the debts due your petitioners will
not be paid. That at the time the decree was entered, your
petitioners were not aware of the facts they now present to the
court, and in consequence of such want of information failed
to file exceptions to said report of liens, if, indeed, any such
exceptions were necessary. That the said deed of trust was
never properly or legally admitted to record. The acknowl-
edgment thereof was taken by the master himself, and was
invalid as authority for the admission of said deed of trust to
record. The said deed of trust, while good as between the
parties and good as against all general creditors of the defen-
dant, Charles A. R. Moore, is invalid and ineffectual as against
the rights of your petitioners."

Such being the character and scope of the petition, it is, if
anything, a petition to rehear an interlocutory decree, founded
on pretended after-discovered evidence, as we shall presently
see. The well established rule is, that whether the proceeding
be by bill of review to a final decree or by a petition to rehear
an interlocutory decree, if it be founded on after-discovered
evidence, the bill or petition, as the case may be, must not
only allege that the new matter was discovered after the rendi-
tion of the decree sought to be reviewed or reheard, but should
be supported by an affidavit that the newly discovered evidence
could not have been procured, with the use of due diligence,
in time to have been used when the decree was rendered; and
the affidavit must also state the substance of the evidence,
which must be relevant, and not merely cumulative, and such
as, if true, ought to produce a different result on another hear-
ing. Lewis, P., in *Trevelyan's Adm'r* v. *Lofft*, 83 Va., 141;
citing *Kendrick* v. *Whitney*, 28 Gratt., 646; *Connolly* v. *Connolly*,

32 Gratt., 657; *Whitten* v. *Saunders*, 75 Va., 563; *Douglass* v. *Stephenson's Ex'or*, *Id.*, 747; 1 Bart. Ch'y Pr., 126. And, in *Armistead* v. *Bailey*, 83 Va., 242, the same judge said: "The rule governing applications to rehear decrees in chancery upon matter of fact, is that the bill of review or petition for rehearing, as the case may be, must set forth the discovery of new evidence, and must be supported by affidavit that such after-discovered evidence could not have been brought forward, by the use of reasonable diligence, before the decree was made. Nor is it sufficient to allege merely that the party applying expects to prove certain facts; but the newly discovered evidence must be substantially and distinctly stated, in order that the court may judge of its relevancy and materiality, and it must not be merely cumulative, but such as would have probably produced a different result, had it been offered in time." Citing *Carter* v. *Allen*, 21 Gratt., 241, and *Whitten* v. *Saunders*, and *Trevelyan's Adm'r* v. *Lofft, supra.*

Tested by these principles, the petition for rehearing was irregular, insufficient, and unauthorized. 1st. It does not distinctly and sufficiently allege the discovery of new matter. On the contrary, without openly and directly so alleging, it covertly alleges that at the time the decree was entered, the petitioners were not aware of the facts presented in their petition, and in consequence of such want of information failed to file exceptions to the report of the commissioner. It is not alleged that the facts relied on could not, in the exercise of due diligence, have been discovered before the rendition of the decree; nor is it conceivable that any such rash allegation could have been ventured upon, for the fact and the only fact relied upon, if indeed any such fact exists, is that the trustee in the deed took and certified the acknowledgment thereof. The suit in which the decree was rendered was brought by a lien creditor on behalf of himself and all other lien creditors, and all the lien creditors were convened before the master. The trust deed in question was of record, and its validity unques-

tioned.   The grantor in the trust deed, the trustee therein, and
the other lien creditors were not only before the court, but
lived, as it were, together in the same community.   Under
such circumstances, it is incredible not only that the pretended
after discovered fact could not have been discovered and used
at the time of the rendition of the decree, but that it was not
actually known, if true, long prior to the taking of the account
of liens and priorities which was solemnly confirmed, without
any exception thereto, by the decree now assailed and sought
to be reheard.   We can, therefore, readily understand why it
is not alleged in the petition for rehearing that the facts relied
on could not have been discovered, in the exercise of due dili-
gence, before the rendition of the decree.

2d.  The petition is defective in that it is not sworn to by the
petitioners, and is not supported by the requisite affidavit set-
ting forth substantially and distinctly the newly discovered
evidence, so as to enable the court not only to judge of its
relevancy and materiality, but to see that it was not merely
cumulative, and thus intelligently to determine whether the
case presented be one that ought to be entertained.   The peti-
tion being palpably defective in the respects above stated, the
court below might very well, without further consideration,
have entered the decree it did, refusing leave to file the petition
for rehearing.   But the judge of the circuit court went on and
considered the case thus presented on the merits, such as they
were, and then rejected the petition.

The body and substance of the petition has already been
stated, and it has been shown that it does not allege any error
apparent, and that none such exists; yet, and as if to avoid the
fatally-defective allegation in respect to after-discovered matter,
in the argument here it is insisted that there is error apparent
inasmuch as the trustee named in the deed is of the same
name as that of the person who took and certified the acknowl-
edgment.   The contention is not sustained by the facts.   The
deed and certificate are copied into the record here.   It is true

that the trustee is described in the deed as L. Triplett, Jr., and that the certificate of acknowledgment begins with the words: "I, L. Triplett, Jr., a notary public," &c.; but the certificate itself is signed not by "L. Triplett, Jr., N. P.," but is signed simply "L. Triplett, N. P." It does not, therefore, necessarily follow that the trustee and the person taking and certifying the acknowledgment is one and the same person. Of this there is some additional evidence in the record. One L. Triplett, Jr., seems to be the administrator of Mrs. Elizabeth G. Moore, the mother of Chas. A. R. Moore. He corresponded with the commissioner in this cause during the taking of the account. There are two written communications from him to the commissioner, in both of which he signs his name "L. Triplett, Jr." Hence, for ought shown to the contrary by the record, the fair inference would seem to be that L. Triplett, Jr., the trustee named in the deed of trust, and L. Triplett, the officer who took and certified the acknowledgment thereof, are not one and the same, but different persons.

But let us examine the case made by the petition for rehearing, in the light of all the facts and circumstances, as it was examined and passed upon by the judge of the circuit court.

It is undeniably the settled doctrine of this court that a grantee in a deed, or a beneficiary under it, is not allowed, as an officer, to take an acknowledgment of the deed by the grantor with a view to its registration, and that the certificate of such acknowledgment is invalid as authority to admit the deed to record, and hence a recordation based upon it is without effect as notice by construction under the registry laws, and the conclusive reason is that the act of an officer in taking an acknowledgment of a deed is judicial in its character, and cannot, therefore, be performed by one who is interested in it, since no man can be a judge in his own case. And it is equally well-settled that a trustee in a deed of trust, though interested only to the extent of his fees, is within the inhibition as any interest whatever, no matter how slight or remote, will work a

disqualification. *Davis* v. *Beasley*, 75 Va., 491; *Bowden* v. *Parrish, ante* p. ——.

But admitting, as we do, both the propriety and binding force of the doctrine thus held, yet it does not follow that a party who has not only been guilty of gross negligence in not asserting his claim when he had every opportunity of doing so, but has long acquiesced in the assertion of adverse rights by another, can then, upon irregular and insufficient allegations, be entertained in aid of an effort on his part to inflict upon another a wrong far greater than that complained of if true.

The Pitman deed of trust, which is assailed as having been improperly and illegally admitted to record, is regular on its face, and the acknowledgment having been taken and certified by an officer authorized by law to take and certify such acknowledgments, the clerk, when the same was presented to him for the purpose, could not do otherwise than perform the simple ministerial act of admitting it to record, and this he did. It cannot be denied that the act of admitting the deed to record was a purely ministerial act. To hold otherwise would not only be against the law, but would involve the absurdity of devolving upon the clerk the duty of assuming judicial functions in the performance of his ministerial duties.

Moreover, the deed being signed and acknowledged as it was, and to all appearances regular and valid, it was the duty of the clerk under sec. 3, ch. 117, Code 1873, to admit it to record, as the statute provides that the clerk shall admit such writing to record as to any person whose name is signed thereto, upon a certificate of his acknowledgment before a justice, or commissioner in chancery of a court of record, or a notary public, etc. The deed in question, on its face, was full up to the statutory requirements essential to authorize its admission to record. But whilst the acknowledgment thus taken and certified constituted authority to the clerk to perform the ministerial act of admitting the deed to record, it did not operate to include inquiry into the validity of the certificate of

acknowledgment by a proper proceeding taken in due time, and in the proper forum.

As before stated, this was a lien creditors' suit, in which an order of reference was made as early as October, 1885, and the amount of liens and priorities was returned in December of that year. In April, 1886, the cause was recommitted, and on the 30th of March, 1887, the second report was returned, and at the April term, 1887, the report of liens, &c., was " in all respects confirmed and approved," and John E. Roller and L. Triplett, Jr., the trustees, respectively, in the two deeds of trust reported in the cause, were appointed special commissioners to sell the land of the defendant, Chas. A. R. Moore. Subsequently, W. W. Roller was substituted as trustee in place of John E. Roller and directed to unite with L. Triplett, Jr., trustee, in executing the decree of April, 14, 1887. The decree was accordingly executed by a sale of the land, on the 8th of March, 1889, to the trust lien creditor, John L. Pitman, at $54 00 per acre, aggregating $18,323 21, and the commissioners reported the sale to court at the April term, 1889, with the recommendation that it be confirmed. And then it was that the appellant, Corey's administrator, and said John E. Roller presented their joint petition to rehear the decree of April 14th, 1887, which confirmed the account and report of liens and priorities, and also directed the sale of the land.

Thus we see that John E. Roller was intimately connected with this suit and all the parties thereto in several capacities: 1st. He was counsel for the defendant, Chas. A. R. Moore, on whose behalf he excepted to the commissioner's first report. 2d. He was before the court as one of the lien creditors by judgment, and his liens were reported and confirmed by the decree sought to be disturbed, and neither he nor any other lien creditor excepted to the report of liens. 3d. He was a party to the suit as trustee in one of the trust deeds reported as liens, while the mythical " L. Triplett, Jr.," was also a party as trustee in the other deed. 4th. He and the same " L. Trip-

lett, Jr.," were associated as special commissioners to make sale of the land under the same decree now sought to be overturned; and he claims the right to accomplish all this mischief at the expense of John L. Pitman, an honest creditor of the defendant, Chas. A. R. Moore, and mainly upon the ground that he has discovered, since the rendition of the decree, that " L. Triplett, Jr.," trustee, and " L. Triplett," N. P., is one and the same person.

Under these circumstances, can it be supposed for a moment that the appellant, and his co-petitioner for a rehearing of the decree, could not, in the exercise of due diligence, have discovered the alleged after-discovered matter in time to have used it at the time of the rendition of the decree; or even that they did not have actual knowledge of the fact alleged, if true, long before the decree was pronounced? Is it credible, in view of the relations of the parties to each other, to the suit, and to the subject matter, that Corey's administrator and John E. Roller, the latter an intelligent, vigilant, and able lawyer, could have failed to receive, before the rendition of the decree, all the information that was necessary, except by stopping their ears and closing their eyes? We think not. Then, in the light of the principles already stated, they have no case.

But it is insisted that, inasmuch as the decree sought to be reheard was an interlocutory decree, the account of liens and priorities thereby confirmed is still open to exceptions, and in support of this contention numerous authorities are cited; and among them, the opinion of this court in *Atwood* v. *Shenandoah Valley R. R. Co.*, 85 Va., 966, where it is said: " It is a doctrine too familiar to need the citation of authorities that a party may always except to a commissioner's report on the ground that an invalid debt has been reported valid, or that a valid debt has been reported invalid." Comfort is sought from this quotation by putting over much stress upon the word " *always.*" This fallacy is easily exploded. We have long had a statute (sec. 9, chap. 182, Code 1873,) which

declares: "The lien of a judgment may always be enforced in a court of equity," and, strange to say, much controversy arose as to its true intrepretation, but it was finally construed to mean that the lien cannot be enforced in equity after it ceases to be enforceable at law. So, a commissioner's report is conclusive, in the absence of proof to the contrary, as to any fact which he is directed to ascertain, *Bowden* v. *Parrish*, *supra*, and is not open to exceptions direct after it has been confirmed, for then it is locked up in the decree of confirmation, and can only be reached, if it be an interiocutory decree, by a petition to rehear the decree, and if the rehearing be granted, then the account and report will be open for exceptions. See *Nelson's Adm'r* v. *Kownslar's Ex'or*, 79 Va., 468.

The present case is not ruled by *Davis* v. *Beazley* and *Bowden* v. *Parrish*, *supra*, the latter of which cases is so confidently relied on by counsel for the appellant. In that case the bill charged directly that the acknowledgment of the deed was taken and certified by the trustee therein, and the commissioner found the fact as charged; and the question thus raised in the proper manner and in due time, this court held that the certificate of acknowledgment was invalid as authority to admit the deed to record. Here the case is very different, for the parties complaining after being guilty of gross *laches*, and under circumstances which put them in the attitude of acquiescing in the assertion of rights adverse to them, then, after the lapse of more than two years from the confirmation of the commissioner's report, for the first time complain, and then present a case so defective that it could under no circumstances be entertained. In other words, they were not only guilty of *laches* and acquiescence until their rights, if any they had, were lost; but when they at last complain, they present no claim entitling them to be heard. The rule that thus cuts them off is essential to the repose of society; and, as was said in *Richardson* v. *Duble*, 33 Gratt., 730, were the practice under such circumstances otherwise, it would be put a premium for negli-

gence, and would place it in the power of one or the other of
the parties in many cases to protract litigation almost indefi-
nitely. .

The controling principle in this and like cases is the same in
effect as that which is enforced by courts of equity in applica-
tions for new trials at law. In *Green & Suttle* v. *Massie*, Judge·
Staples said: "Courts of equity relieve against judgments at
law upon the ground that the party injuriously affected thereby
has a defense of which he might have availed himself, but was
prevented by fraud or accident, unmixed with any fault on his
part. If the facts upon which the application for relief is
based, were known to the party at the time of the trial in the
law court, it is his duty to bring them to the consideration of
the court, or furnish some reasonable and satisfactory excuse
for his failure to do so. * * * The cases fully establish
that, after a trial at law, a party, to entitle himself to have a
new trial granted by a court of equity, must show that he has
been guilty of no laches; that he has done everything that
could be reasonably required of him. to obtain relief at law.
Without such excuse, which is to be judged of according to the
circumstances, he cannot get relief in equity." The general
rule is also clearly and strongly stated in *Haseltine* v. *Walton &
Briskey*, 16 Gratt., 120, where Judge Lee said: "Where a
party has had a day in which he could make his defense in
the proper forum, before a verdict and judgment against him,
equity will not entertain him and grant relief after such ver-
dict and judgment, unless in cases of fraud, acccident or sur-
prise, or some adventitious circumstance, unmixed with negli-
gence on his part, which shall sufficiently account for the
omission to seek its intervention before judgment."

Coming now to applications like the one in hand, we find
an apt illustration of the importance of the rule which we
apply in the present case, in the case of *Hubbard* v. *Camper-
down*, S. E. Reporter, July 19, 1887, p. 578, in which Cowan,
J., delivering the opinion of the supreme court of South Caro-

lina, said : " In the case of *Boyce* v. *Boyce*, 6th Rich. Eq., the court says, 'we have numberless adjudications that where a party has had an opportunity to except, and has not excepted, he cannot again bring the matter before the master or the court on circuit òr on appeal.' The principle is essential to the due and orderly administration of justice, and must have a place in every well constituted forum."

It is not even pretended that the decree sought to be reheard—that of April 14th, 1887—was in any way affected by any fraud, surprise or mistake, so far as the appellant is concerned. He was before the court and the decree was pronounced, confirming the commissioner's report, without objection or exception, either by him or any one else. And now, after, as set forth in the decree of April 19th, 1889, and after land greatly depreciated in value, and after John L. Pitman has become the purchaser thereof, the appellant, and John E. Roller, comes into court and asks leave to file a petition to cut Pitman out of a large sum of money fairly loaned by him to the debtor, Charles A. R. Moore. To permit such a result, under the circumstances, would, in the language of the decree refusing leave to file the petition, be unjust. The decree of the circuit court refusing such leave is clearly right, and must be affirmed.

DECREE AFFIRMED.